**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| **TOMMIE FULLER,** ) | Case No. 1:06 CV 2093 |
| ) | |
| Plaintiff, ) | Judge Dan Aaron Polster |
| ) | |
| vs. ) | **MEMORANDUM OF OPINION** |
| ) | **AND ORDER RE: MOTION TO** |
| **CUYAHOGA METROPOLITAN** ) | **DISMISS CLAIMS AGAINST** |
| **HOUSING AUTH., et al.,** ) | **DEFENDANTS CMHA, JACKSON,** |
| ) | **JAKUB, BURDYSHAW, AND HARRIS** |
| Defendants. ) | |

Before the Court is the Motion of Defendants Cuyahoga Metropolitan Housing Authority ("CMHA"), Thomas Burdyshaw, and James Harris to Dismiss for Failure to State a Claim **(ECF No. 11)**, in which Defendants Anthony Jackson and Christopher Jakub joined **(ECF No. 15)**. The Court has reviewed the Complaint, the Motion, the opposition brief and the reply brief. (Respectively, ECF Nos. 1, 11, 23, 25.) For the reasons to follow, the Motion is **GRANTED IN PART** and **DENIED IN PART**.

### I. FACTUAL BACKGROUND

Plaintiff Tommy Fuller worked as a Senior Fireman for the CMHA Heating Department for more than seventeen years – from January 2, 1986 to January 9, 2003 – during which time he had consistent exemplary employment records and a near-perfect attendance

record.  (Compl.:¶¶5,26.)  Fuller, a fifty-two year old African-American male, is a certified boilermaker, and his job as CMHA Heating Senior Fireman included maintaining, repairing, servicing and troubleshooting assigned boilers and individual residential heating units in certain properties operated by Defendant CMHA.  (Id.:¶¶5,6.)  In addition, Fuller's job required that he equip the boiler room from which he operated with necessary tools and supplies.  (Id.:¶5.)  One of the CMHA properties to which Fuller was assigned for approximately sixteen years was Woodhill Estates, within which is Morris Black Place.  (Id.:¶¶14,6.)  Morris Black Place consists of a street, parking lot, and family housing units.  (Id.:¶6.)

In the early evening of Friday, January 3, 2003, Fuller drove to Morris Black Place to prepare the boiler room with supplies for use during the coming winter weekend.  (Id.:¶16.)  When Fuller, who was dressed in his CMHA Heating Department-issued uniform including shirt, hat with "CMHA Heating" logo, and CMHA-issued coat marked "Fuller," arrived at Morris Black Place, he parked his car in the parking lot and proceeded to let himself into the unit at 2481 G Morris Black Place, so he could use the restroom and the desk within that uninhabited unit.  (Id.:¶¶16,18.)  The boiler room that was Fuller's ultimate destination is located immediately next to the building containing 2481 G, and CMHA service and maintenance employees – who possessed the necessary CMHA keys to open the unit – had traditionally used the vacant unit as a rest stop and office.  (Id.:¶18.)  A sign reading "CMHA Community Policing Station" hung outside 2481 G, but the unit had not been used as a police mini-station for approximately eleven years.  (Id.)

Contemporaneous with Fuller's work that day, CMHA Detective Thomas Burdyshaw, a Caucasian twenty-eight year old male, and CMHA Police Officer James Harris, an

-2-

African-American thirty-six year old male, were patrolling the Morris Black area in their CMHA car and on foot, while dressed in their CMHA police uniforms and carrying CMHA-issued guns, batons, and mace. (Id.:¶17.) After Fuller used his keys to enter 2481 G, Burdyshaw and Harris approached the door and tried to enter the unit. (Id.:¶19.) The keys Burdyshaw and Harris possessed did not work to open the door, however, so the two remained outside unit 2481 G. (Id.)

After finishing his business in the "office," Fuller opened the door to leave, at which point Burdyshaw and Harris surrounded and confronted him on the apartment's stoop. (Id.:¶19.) Fuller stated his name for the officers, and explained that he was a CMHA employee, to no discernable effect. (Id.:¶20.) Instead, the officers shouted demands at Fuller, and accused him of drinking alcohol. (Id.) They kept Fuller's back against the wall and proceeded to search him. (Id.:¶20.) At some point, Burdyshaw or Harris (or both) pushed Fuller to the snowy ground. (Id.:¶21.) Once Fuller was on the ground, the officers held him face down in the snow and handcuffed him. (Id.) After Fuller was safely restrained by the handcuffs, Burdyshaw and Harris repeatedly pepper-sprayed his face and eyes. (Id.) Burdyshaw and Harris kept Fuller restrained, lying in the snow, for approximately forty-five minutes, during which time they allowed the pepper spray to remain on his face and eyes. (Id.:¶22.)

Fuller was eventually transported to St. Vincent Hospital, where he was treated for contusions and abrasions to his face, and chemical conjunctivitis. (Id.:¶23.) The medical care providers at the hospital found no evidence of drug or alcohol use. (Id.) Upon release from the hospital, Fuller was transported directly to jail, where he remained for four days without access to critical medication and without being charged. (Id.) Not until January 7, 2003 was

Fuller charged with two counts of Assault on a Peace Officer, after which he was released on bond. (Id.:¶24.)

As Fuller's personal possessions and keys were confiscated when he was detained, Fuller proceeded to the CMHA Police Station to retrieve them the next morning, on January 8, 2003. (Id.:¶25.) When he inquired about the items, he was informed that he needed to go to the personnel department the next morning to reclaim them. (Id.) When Fuller went to the CMHA personnel department to retrieve the items on the morning of January 9, 2003, he was instead taken to a conference room. (Id.) There, waiting for Fuller, were Sylvester R. Milton, a CMHA Employee Relations Specialist, other CMHA personnel, and union stewards. (Id.) Although Fuller had no prior notice, Milton and the others proceeded to conduct a "hearing" on the spot – presumably related to his arrest and his possible discharge. (Id.) CMHA fired Fuller the very next day, on January 10, 2003. (Id.:¶26.)

CMHA moved forward with Fuller's prosecution, and on February 3, 2003, Fuller was indicted on two counts of Assault on a Peace Officer in violation of O.R.C. § 2903.13, based on the incident with Burdyshaw and Harris that occurred one month earlier. (Id.:¶27.) Fuller asserted his innocence, and on June 3, 2004, after a seven-day trial, Fuller was acquitted on both counts. (Id.:¶28.)

## II. PROCEDURAL BACKGROUND

On January 3, 2005, Fuller filed a lawsuit against Defendants CMHA, the CMHA Police Department, CMHA Detective Burdyshaw, CMHA Chief of Police Jackson, CMHA Police Officer Harris, CMHA Sgt. Jakub, and John Doe CMHA Employees 1-20. (Case No.

1:05-cv-9 ("First Case"), ECF No. 1.)[1] Based on the events of January 3, 2003 when Burdyshaw and Harris intercepted and restrained Fuller, and thereafter, the complaint alleged federal claims under 42 U.S.C. § 1983 for use of excessive force and unreasonable search and seizure, and under 42 U.S.C. § 1985 for conspiracy to deprive Fuller of equal protection of the law based on his race. Fuller also alleged state claims for intentional infliction of emotional distress ("IIED") under O.R.C. § 2305.09(D), and negligent hiring, retention, training and supervision under O.R.C. § 2305.10.

Defendants filed a Joint Answer on January 21, 2005 (First Case, ECF No. 7), after which Fuller filed a motion for leave to file a first amended complaint on February 28, 2005 (id., ECF No. 19). In the proposed first amended complaint, Fuller alleged three additional § 1983 claims – an equal protection claim, a due process claim, and a claim for "deprivation of right to liberty, health, safety, privacy, and welfare." (Id., ECF No. 19.) At a teleconference held on April 18, 2005, Fuller's counsel informed the Court that she would like to withdraw the motion she had filed for leave to file a first amended complaint and that she would like permission to file a second amended complaint that included a § 1983 due process claim and a state-law malicious prosecution claim. The Court granted her request to withdraw the motion for leave to file an amended complaint (see id., ECF No. 22), and told her that he would grant her proposed motion for leave to file a second amended complaint. However, counsel never filed a second amended complaint that included these claims, and the parties agreed to a dismissal of the case without prejudice on August 30, 2005. (Id., ECF No. 32.)

---

[1] On February 25, 2005, the Court dismissed the Police Department because it was not a legal entity capable of being sued in its own right. (First Case, ECF No. 17.)

On August 30, 2006, Fuller filed the instant complaint against the same defendants plus the CMHA Board of Commissioners and CMHA Executive Director George Phillips. (Case No. 1:06 CV 2093 ("Second Case"), ECF No. 1.) The complaint alleges federal claims against Defendants in their official and individual capacities under § 1983 for use of excessive force (Count 1), unreasonable search and seizure (Count 2), deprivation of right to due process (Count 3), deprivation of right to liberty, health, safety, privacy and welfare (Count 4) and a federal claim under § 1985 for conspiracy to violate Fuller's constitutional rights (Count 5). (Second Case, ECF No. 1.) The complaint further alleges state tort claims against Defendants in their official and individual capacities for intentional infliction of emotional distress (Count 6), negligent hiring and retention (Count 7), negligent training and supervision (Count 8) and malicious prosecution (Count 9). (Id.) The Court dismissed with prejudice the claims against Defendants George Phillips and the CMHA Board in a memorandum of opinion issued on January 12, 2007. (See id., ECF Nos. 28, 29.) As these Defendants were not named in the First Case, the Court held, *inter alia*, that the statutes of limitations applicable to the claims against them had all expired. (See id.)

Thus, the only claims remaining for the Court's consideration are the claims against Defendants CMHA, and Defendants Jackson, Jakub, Burdyshaw, Harris, and John Doe CMHA Employees 1-20 (**the "remaining Defendants"**) in their official and individual capacities.

### III. JURISDICTION AND LEGAL STANDARD

This Court has jurisdiction over Fuller's federal claims under 28 U.S.C. § 1331. The Court has supplemental jurisdiction over Fuller's state law claims pursuant to 28 U.S.C. § 1367.

Rule 12(b)(6) authorizes dismissal of a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In assessing the sufficiency of a complaint, courts must follow "the accepted rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). In other words, the purpose of a motion under Fed.R.Civ.P. 12(b)(6) is to test the formal sufficiency of plaintiff's claims for relief, not to resolve contested facts or rule upon the merits of the case. *Klusty v. Taco Bell Corp.*, 909 F. Supp. 516, 519 (S.D. Ohio 1995). Therefore, "on a Fed.R.Civ.P. 12(b)(6) motion . . . the complaint is construed liberally in favor of the party opposing the motion." *Miller v. Currie*, 50 F.3d 373, 377 (6th Cir. 1995). A complaint must contain either direct or inferential allegations with respect to all the material elements necessary to sustain a recovery under some viable legal theory. *Allard v. Seitzman (In re DeLorean Motor Co.)*, 991 F.2d 1236, 1240 (6th Cir. 1993).

### IV. ANALYSIS

**A. Federal Claims**

Fuller brings federal claims under 42 U.S.C. § 1983 and 42 U.S.C. § 1985 against the remaining Defendants.

**1. Civil Rights Violations Under 42 U.S.C. § 1983 (Counts 1-4)**

Fuller alleges that Defendants subjected him to excessive force (Count 1), unreasonable search and seizure (Count 2), deprivation of right to due process (Count 3), and deprivation of right to liberty, health, safety, privacy, and welfare (Count 4).  Defendants argue only that these claims are barred by the statute of limitations because the Ohio savings statute does not apply to federal civil rights claims.

The statute of limitations for filing a federal §1983 claim is determined by state law; in Ohio, the period is two years.  *Browning v. Pendleton*, 869 F.2d 989 (6th Cir. 1989) (borrowing from most closely analogous state limitation statute, O.R.C. § 2305.10); *Easterly v. Budd*, No. 4:06 CV 186, 2006 WL 2404143 at n.6 (N.D. Ohio  Aug. 18, 2006).  Furthermore, Ohio's savings statute, O.R.C. § 2305.19, allows for a plaintiff who voluntarily dismisses a claim after the statute of limitations has run to refile the action within one year of the dismissal.  The Sixth Circuit has explained that the savings statute applies to §1983 claims such as Fuller's.  *See, e.g.*, *Harris v. United States*, 422 F.3d 322, 331 (6th Cir. September 2, 2005) (*citing Bd. of Regents of the Univ. of the State of New York v. Tomanio*, 446 U.S. 478, 483 (1980)).  *See also*, *Harris v. Canton*, 725 F.2d 371, 375 (6th Cir. 1984).[2]

Here, the savings statute applies to save from dismissal the § 1983 claims that Fuller filed in his First Case (i.e., the excessive force claim and the unreasonable search and seizure claim).  Defendants Burdyshaw and Harris arrested Fuller on January 3, 2003.  Fuller

---

[2] Defendants' reliance on *Bowles v. Cleveland*, 129 Fed. Appx. 239, 243 (6th Cir. April 25, 2005) to support its position that the Ohio savings statute does not apply to federal civil rights cases is unavailing.  Although the panel in *Bowles* stated that "there is no savings statute" as to the § 1983 claims asserted in that case, it is an unpublished opinion that directly contradicts published Sixth Circuit authority issued both before (i.e., *Harris v. Canton*) and after (i.e., *Harris v. United States*) the *Bowles* decision.

filed his First Case alleging § 1983 claims for excessive force and unreasonable search and seizure on January 3, 2005, within the two-year statute of limitations. The parties agreed to a dismissal without prejudice of the First Case on August 30, 2005, after the limitations period expired. Fuller filed the Second Case on August 30, 2006, within the additional one-year grace period. Because Counts 1 and 2 are not time-barred, Defendants' Motion is **DENIED** as to the remaining Defendants on those Counts.

Conversely, the savings statute does not apply to claims brought in the Second Case that were not part of the First Case. *Stone v. North Star Steel Co.*, 152 Ohio App.3d 29, 34 (Ohio App. 7 Dist. 2003) (citing *Children's Hosp. v. Ohio Dep't of Pub. Welfare*, 69 Ohio St.2d 523 (1982)). The Court believes that this legal tenet applies to the § 1983 claims that were never formally before the Court in the First Case, i.e., the due process claim articulated in Count 3, and the claim for deprivation of the right to liberty, health, safety, privacy, and welfare articulated in Count 4.[3] Accordingly, the Court directs Fuller to file a brief <u>no later than February 1, 2007</u>, showing cause why Counts 3 and 4 should not be dismissed with prejudice as time-barred.

### 2. 42 U.S.C. § 1985 Conspiracy (Count 5)

Fuller alleges that the remaining Defendants conspired together and with each other, in their individual and official capacities, to deprive Fuller of the equal protection of the law as an African-American male. Defendants assert in the instant Motion only that Fuller's § 1985 conspiracy claim is barred by the intra-corporate conspiracy doctrine, which holds that employees of a corporation or governmental entity generally cannot be deemed to conspire with

---

[3]Indeed, the Court is unaware of any claim for deprivation of the constitutional right to "liberty, health, safety, privacy and welfare" that exists separate and apart from a due process claim. *See, e.g., Chandler v. The Village of Chagrin Falls*, No. 1:03CV2057, 2005 WL 1966321 at *6 (N.D. Ohio Aug. 14, 2005).

their corporate or governmental employer. *See, e.g.*, *Johnson v. Hills & Dales General Hospital*, 40 F.3d 837, 839-40 (6th Cir. 1994).

The Court notes that a "scope of employment" exception to the intra-corporate conspiracy doctrine exists in the Sixth Circuit's jurisprudence. *Reese v. Southfield*, 1998 U.S. App. LEXIS 20527, *18 (6th Cir. 1998) (citing *Johnson*, 40 F.3d at 841). *See also*, *Jackson v. City of Columbus*, 194 F.3d 737, 753 (6th Cir. 1999) (overruled on other grounds, *Sweirkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002)) (citing *Johnson*, 40 F.3d at 840) ("members of the same legal entity cannot conspire with one another as long as their alleged acts were within the scope of their employment"). The decision of whether the exception applies to § 1985 conspiracy claims necessarily involves a finding of fact (i.e., whether the employees acted outside the scope of their employment when they allegedly violated Fuller's constitutional rights). Because this question is fact-driven, the Court will hold in abeyance its ruling on Count 5, pending completion of discovery.

**B. State Claims**

Fuller brings Ohio state law claims against the remaining Defendants for intentional infliction of emotional distress (Count 6), negligent hiring and retention (Count 7), negligent training and supervision (Count 8), and malicious prosecution (Count 9). Defendants argue for dismissal of these claims based on Ohio's sovereign immunity law, O.R.C. § 2744 *et seq*.

The Ohio Supreme Court has established a 3-tiered analysis to determine whether immunity applies to political subdivisions in a given situation. *Cater v. Cleveland*, 83 Ohio St. 3d 24, 28 (1998). The first tier is to establish immunity under § 2744.02(A)(1); the second tier is

-10-

to analyze whether any of the exceptions to immunity under § 2744.02(B) apply to strip the political subdivision of immunity; if so, then under the third tier, the political subdivision has the burden of showing that one of the defenses of § 2744.03 applies.  If so, then immunity is reinstated.  *Id.*; *Hubbard v. Canton City School Bd. of Educ.*, 97 Ohio St. 3d 451, 453-455 (2002). A metropolitan housing authority is a "political subdivision" for purposes of § 2744. *Wade v. Lorain Metro. Housing Auth.*, 1991 Ohio App. LEXIS 4320, *4 (Ohio App. 1991) (citing *Country Club Hills Homeowners Assn. v. Jefferson Metro. Housing Auth.*, 5 Ohio App. 3d 77 (Ohio App. 1981)).

Additionally, employees of a political subdivision may be entitled to immunity. That analysis begins with R.C. § 2744.03(A)(6).  *See Cramer v. Auglaize*, 2005 Ohio App. LEXIS 3332, *48 (Ohio App. 2005) (citing *Thorp v. Strigari*, 155 Ohio App.3d 245 (Ohio App. 2003) (citing *Fabrey v. McDonald Village Police Dep't.*, 70 Ohio St. 3d 351, 356 (1994)). Under § 2744.03(A)(6), an employee of a political subdivision is immune from liability unless one of the following apply:  (a) the employee's acts or omissions were manifestly outside the scope of his employment or official responsibilities; or (b) the employee's acts or omissions were with malicious purpose, in bad faith, or in a wanton or reckless manner; or (c) liability is expressly imposed upon the employee by a section of the Revised Code. O.R.C. § 2744.03(A)(6).

### 1. Malicious Prosecution (Count 9)

As a preliminary matter, the Court observes that Fuller's malicious prosecution claim in Count 9 is time-barred.  The statute of limitations for bringing a state law malicious prosecution claim is one year.  O.R.C. § 2305.11(A).  The malicious prosecution claim accrued

-11-

on June 3, 2004 when Fuller was acquitted.  Fuller never filed a malicious prosecution claim in the First Case despite being given leave to do so, and the Second Case, which included a malicious prosecution claim, was not filed until August 30, 2006 – well beyond the one-year limitation period.  Because the claim is time-barred, the Court **GRANTS** Defendants' Motion on Count 9, which is **DISMISSED WITH PREJUDICE**.

### 2. Intentional Infliction of Emotional Distress (Count 6)

#### a. Defendant CMHA

As to Fuller's IIED claim against CMHA, the Court notes that the Ohio Supreme Court has held that there is no exception to immunity protecting political subdivisions from liability for the IIED torts of its employees.  *See Wilson v. Stark Cnty. Dept. of Human Services*, 70 Ohio St. 3d 450, 452 (1994); *Hubbard*, 97 Ohio St. 3d at 453 (construing the relevant provisions of § 2744.02(B)).  Thus, political subdivisions are immune from liability for such claims.  Accordingly, the Court **GRANTS** Defendants' Motion as to Count 6 with respect to Defendant CMHA, and this count is hereby **DISMISSED WITH PREJUDICE**.

#### b. Individual Defendants

The decision of whether immunity applies to protect the individual Defendants on Count 6 necessarily involves a finding on whether the employees acted outside the scope of their employment or whether they acted with malicious purpose, in bad faith, or in a wanton or reckless manner.  O.R.C. § 2744.03(A)(6).  Because this question is fact-driven, the Court will hold in abeyance its ruling on Count 6 as to the individual Defendants, pending completion of discovery.

### 3. Negligent Hiring and Retention (Count 7) and Negligent Training and Supervision (Count 8)

The decision of whether political subdivision immunity protects Defendants from liability under Fuller's Counts 7 and 8 is also fact-driven. Accordingly, the Court will hold in abeyance its ruling on Counts 7 and 8, pending completion of discovery.

## V. CONCLUSION

Based on the foregoing, the Court **DENIES** Defendants' Motion as to Count 1 (the § 1983 excessive force claim) and Count 2 (the § 1983 unreasonable search and seizure claim). The Court **GRANTS** Defendants' Motion on Count 9 (the malicious prosecution claim), and as to Defendant CMHA on Count 6 (the IIED claim). The Court **HOLDS IN ABEYANCE** its ruling on Count 5 (the § 1985 conspiracy claim), Count 7 (the negligent hiring and retention claim) and Count 8 (the negligent training and supervision claim), pending completion of discovery.

Finally, the Court **ORDERS** Fuller to file a brief <u>no later than February 1, 2007</u> showing cause why Count 3 (the § 1983 due process) and Count 4 (the § 1983 claim for deprivation of right to liberty, health, safety, privacy and welfare) should not be dismissed without prejudice as time-barred.

**IT IS SO ORDERED.**

            <u>*/s/Dan A. Polster January 25, 2007*</u>
            **Dan Aaron Polster**
            **United States District Judge**